## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MARTHA GONZALEZ,** | § | |
| **individually and on behalf of all** | § | |
| **others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CAUSE NO. 1:18-cv-169** |
| **v.** | § | |
| | § | |
| **CORECIVIC, INC.** | § | |
| | § | |
| **Defendant.** | § | **A Jury is Demanded** |

## ORIGINAL COMPLAINT AND CLASS ACTION

Martha Gonzalez, individually and on behalf of all other persons similarly situated, files this original complaint against CoreCivic, Inc.

## STATEMENT OF THE CASE

CoreCivic is a "private prison" company that forces immigration detainees to work in forced labor camps under threat of isolation, retaliation, and other deprivations. These forced labor camps are located in Texas and across the United States. CoreCivic makes a mockery of the Constitution and the saws of the United States of America by maintaining these forced labor camps in violation of the human rights of the individual detainees. CoreCivic profits mightily from the use of these forced labor camps and has posted profits in excess of $1.5 billion annually. This lawsuit is brought on behalf of Ms. Gonzalez and all other similarly situated

individuals for compensation and to bring a stop to this terrible Un-American and unconstitutional practice.

### 2.

### Parties

2.1     Martha Gonzalez is a current T-1 Visa holder and resident of Harris County, Texas.  Ms. Gonzalez was a civil immigration detainee who worked at the Defendant's Laredo Detention Center, Laredo Texas, the Defendant's T. Don Hutto Residential Center in Taylor, Texas, and the La Salle County Detention Center at various times from May 2016 through August 2017.

2.2     Defendant CoreCivic, Inc., is a Maryland corporation with its principal place of business at 10 Burton Hills Blvd, Nashville, Tennessee 37125.

### 3.

### Jurisdiction and Venue

3.1     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises out of violations of the federal Trafficking in Victims Protection Act under 18 U.S.C. §§ 1589, *et seq.* (the "TPVA").

3.2     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because, (1) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, (2) the proposed Class consists of

more than 100 class members; and (3) none of the exceptions under the subsection apply to this action.

3.3     This Court has personal jurisdiction over the Defendant, CoreCivic, because CoreCivic is registered to and actually does business in the State of Texas. Furthermore, CoreCivic has more than sufficient minimum contacts in Texas. CoreCivic has facilities in Texas and specifically in the Austin Division of the Western District of Texas which are implicated in this suit and from which all class members will have been detained.

3.4     Plaintiff was detained for a time in the Laredo Detention Center, the La Salle County Regional Detention Center, and the Hutto Residential Center, all of which are facilities owned by or under the control of Defendant. Therefore, a substantial part of the events giving rise to the Plaintiff's and the Class Members' claims alleged in this lawsuit occurred in this district.

**4.**

**<u>FACTS SUPPORTING RELIEF</u>**

**<u>COMMON FACTUAL ALLEGATIONS</u>**

4.1     Ms. Gonzalez and similarly situated individuals are current and former civil immigration detainees.  Ms. Gonzalez brings this proposed class action on behalf of all civil immigration detainees who were incarcerated and forced to work by CoreCivic, a for-profit corporation engaged in the business of owning and

operating detention facilities and prisons from February 21, 2007 to the opt-out date, inclusive (the "Class Period.")

## CoreCivic's Core Business:  Forced Labor Camps

4.2     CoreCivic owns and/or operates forced labor camps around the country, including but not limited to, the Laredo Detention Center, a detention center located in Laredo, Texas, and the Hutto Residential Detention Center, located in Taylor, Texas.  The La Salle County Regional Detention Center, located in Encinal, Texas, is available and used by CoreCivic.  Upon information and belief, this forced labor camp is owned by La Salle County.

4.3     CoreCivic unlawfully forces, coerces, and uses civil immigration detainees to clean, maintain, and operate their facility.  In some instances, CoreCivic pays detainees $1 to $2 per day, and in other instances detainees are not compensated with wages at all for their labor and services.

4.4     The use of forced labor is quite lucrative.  Replacing paid workers with forced labor results in massive cost savings.  CoreCivic uses forced labor rather than hiring workers and paying a proper minimum wage, overtime, and benefits. The common narrative that "immigrants" are taking American jobs is the business model for CoreCivic.  This business model is so profitable that CoreCivic reported $1.79 billion in total revenues in 2016.

## Forced Labor Camp Assignments and Duties

4.5    Ms. Gonzalez and Class Members were engaged, suffered, and permitted to work by CoreCivic at, without limitation, the Laredo Detention Center and the Hutto Residential Center.  CoreCivic controlled the wages, hours, and working conditions of Plaintiff and Class Members.  CoreCivic supervised Plaintiff and Class Members.  CoreCivic forced Ms. Gonzalez and Class Members to, without limitation:

a.    scrub bathrooms, showers, and toilets;

b.    clean and maintain CoreCivic's on-site medical facility;

c.    clean floors, and windows;

d.    clean patient rooms and medical staff offices;

e.    sweep, mop, strip, and wax floors throughout the medical facility and the entire facility;

f.    launder medical facility laundry;

g.    launder detainee laundry;

h.    prepare and serve detainee meals;

i.    assist in preparing catered meals for law enforcement events sponsored by CoreCivic;

j.    perform clerical work for CoreCivic;

k.    sort and prepare clothing for newly arriving detainees;

l.      provide barber services to detainees;

m.      run and manage the law library;

n.      clean intake areas and the solitary confinement unit;

o.      clean and prepare vacant portions of the facility for newly arriving detainees;

p.      clean the facility's warehouse; and,

q.      maintain the exterior and landscaping of the CoreCivic buildings.

4.6     Some of the detainees were forced to work without any pay at all.

4.7     Some detainees who "volunteered" for such work were paid $1 to $2 per day.  The "money" paid, however, was not available for outside purchases while detained.  These payments were made and the only option Plaintiff and/or Class Member had for purchases were those available in the CoreCivic "company store" or commissary.

## Threats, Intimidation, and Retaliation Keep The Work Force In Line

4.8     CoreCivic maintained this forced labor camp by threatening punishment, by intimidation, and by retaliation.  CoreCivic threatened detainees who refused to work with confinement, physical restraint, substantial and sustained restrictions, deprivation, violation of their liberty, and solitary confinement. CoreCivic made frequent examples of individual detainees who complained or refused to work.  CoreCivic carried out this plan with the intent to maintain and

continue the use of forced labor and other services.   CoreCivic also used these punishments to maintain a docile and unresisting detainee population.

4.9    These conditions were so draconian and harsh that the threats and the actual punishments caused Plaintiff and others putative class members severe physical and mental pain and suffering.

4.10   CoreCivic's acts were carried out with intent, malice, oppression, fraud, and duress.  CoreCivic acted with complete disregard of the rights and liberty of the detainees, treating civil detainees as slave labor and without regard to their dignity or humanity.

### Common Practices Across Institutions:  Laredo, Hutto, and La Salle

4.11   The Laredo Detention Center and the Hutto Residential Center are both owned and operated by CoreCivic.  La Salle is available to CoreCivic but upon information and belief, that forced labor camp is maintained and operated by the County of La Salle.

4.12   Detainees are routinely transferred between the three facilities and have been for years.

4.13   Upon information and belief, the three facilities share similar policies and procedures which are enforced company-wide.

4.14   The total number of immigration detainees who were subject to the payment of one or two dollars or were forced into labor are unknown at this time.

The practices appear to be spread across CoreCivic, being implemented in slightly different fashion, but maintaining sufficient similarity to describe the practices as widespread and continuous.

**CoreCivic's Practices Hurt Detainees and Unjustly Enrich the Corporation**

4.15    CoreCivic has been wrongly and unjustly enriched by the use of forced labor, human trafficking practices, and paying one or two dollars a day.  These business practices are unlawful and exploitative.  These business practices leave CoreCivic with an unfair business advantage -- an uncompensated labor force -- that is unavailable (and illegal) for any other business in America.  CoreCivic retains revenues which are then turned into profit by not being required to use proper labor practices and as a result of being permitted to continue and exploiting forced labor and illegal compensation practices.

4.16    CoreCivic should not be permitted to continue to amass profits and revenues based upon such egregious, unconstitutional, illegal and unfair labor practices.

4.17    CoreCivic's actions are a continuing pattern and course of conduct. These are not isolated incidents, but constitute an institutional decision to exploit the immigration detainees that are trusted to their care while awaiting a decision on immigration status and other matters.

4.18   Immigration detainees are not prisoners.  They have been convicted of no crime.  CoreCivic treats these human beings as a slave labor force.  CoreCivic does not provide basic human dignity to these people and as a result causes serious and severe mental distress and anguish.

4.19   The conduct has been happening to Plaintiff and others for years, but has not been revealed in its full extent until the present day.  Plaintiff was released from detention in August of 2017 and has sued within sufficient time to cover each and every incident of her detention.

4.20   Plaintiff and others similarly situated were/are not aware of the true facts regarding the full extent of CoreCivic's unlawful and illegal acts.  Plaintiff and other similarly situated would have lacked the ability to have earlier discovered the true facts until the present due to false statement made by CoreCivic, its employees and agents, regarding the legality of the one or two dollar a day payments and the forced labor and related actions.

**The For-Profit Detention Industry Abuses The Immigration System.**

4.21   CoreCivic is a massive company that operates hundreds of private prisons across the United States.

4.22   CoreCivic's facilities are used both for incarcerating prisoners, that is, individuals who have been convicted of a crime and for incarcerating civil

immigration detainees.  The facilities are dedicated to one or the other.  CoreCivic does not mix convicted prisoners with immigration detainees in the same facility.

4.23   Across the country, hundreds of undocumented individuals lacking legal permission to enter or remain in the United States are, during the course of any given day, arrested and typically brought to a detention facility.  Those individuals are then placed into a removal proceeding in front of an immigration judge.  The charges against them are civil, not criminal, in nature.

4.24   These individuals may include refugees who are seeking asylum. Individuals detained at the border are only released only on a case-by-case basis by the authority of the U.S. Bureau of Immigration and Customs Enforcement (ICE).

4.25   ICE uses a combination of publicly and privately owned and operated facilities to detain immigrants.  Those in detention include immigrants in the country illegally, asylum seekers, green card holders, and those awaiting immigration hearings (referred to as "detainees" or "civil immigration detainees").

4.26   Nine out of ten of the country's largest immigration detention facilities are operated by private companies like CoreCivic.   These facilities hold approximately two-thirds of the civil immigration detainees in a system that currently keeps more than 31,000 people in custody on a typical day.

4.27   The for-profit civil immigration detention business is worth over $3 billion dollars per year.  These centers are not just located solely in border regions,

but are scattered across the county because individuals are detained in every single state in the United States.

4.28   Companies such as CoreCivic deny engaging in lobbying efforts, but private prison corporations such as CoreCivic routinely specifically target legislators over immigration "reform." The companies' success in lobbying for immigration detention has been so successful that by 2015, CoreCivic derived 51% of its revenue from federal contracts.

4.29   In March of 2017, the Trump administration announced that the United States' civil immigration detention capacity would be increased by 20,000 beds (over four-hundred fifty percent (450%)).  This signals the largest increase in immigrant detention since World War II and is, in essence, a "go directly to jail and work for free card" from which CoreCivic derives nearly $1 billion a year in revenue.

**Common Relief Sought**

4.30   The Plaintiff and Class Representative in this case seeks injunctive relief requiring CoreCivic to implement and maintain policies and practices to comply with all applicable laws and regulations designed to protect human rights, prevent and remedy those types of unlawful trafficking and forced labor practices, and protect detainees' employment and civil rights and their well-being and safety, as well as restitution, damages, statutory remedies, disgorgement, and other further relief this Court may deem proper.

4.31   Plaintiff also seeks to recover, on her own behalf and on behalf of all others similarly situated, the difference between the fair value of the labor or work they performed and what they were paid ($1 to $2 per day).   CoreCivic violated federal law when CoreCivic physically forced, intimidated, threatened, and mentally coerced mentally Plaintiff and Class Members to work for no pay or virtually no pay.   Plaintiff was forced by CoreCivic to clean the "pods" where they were housed, and were forced to clean, maintain, and operate other areas of the CoreCivic detention facilities under threat of punishment, including but not limited to lockdown and/or solitary confinement.

### Martha Gonzalez's Path To This Lawsuit and Representative Plaintiff

4.32   Ms. Martha Gonzalez first came to the United States in 2008.   Ms. Gonzalez is from Oaxaca, Mexico. Ms. Gonzalez and her partner had a child in Mexico and then came to the United States.   Ms. Gonzalez gave birth to a child in the United States.

4.33   Ms. Gonzalez's partner was deported in 2012 and Ms. Gonzalez followed him back to Mexico.

4.34   The partner began abusing Ms. Gonzalez in Mexico, physically and mentally.   Ms. Gonzalez went to the Mexican authorities, but received no assistance.

4.35   Ms. Gonzalez, to avoid the abuse, returned to the United States.

4.36   Ms. Gonzalez has two children with this partner.   One was born in Mexico, and the other was born in the United States.   The one born in Mexico remains in Mexico and will likely be sponsored by Ms. Gonzalez at an appropriate time.   The other child lives in the United States.

4.37   Ms. Gonzalez made her way to the United States using the dangerous routes available through "coyotes."   Ms. Gonzalez's attempts to cross the border using coyotes did not go well.

4.38   Ms. Gonzalez and the coyotes were picked up and deported.   During the deportation, Ms. Gonzalez was separated from and lost track of her daughter. The coyotes threated Ms. Gonzalez with violence to herself and her daughter if Ms. Gonzalez refused their request to act as a prostitute.   Ms. Gonzalez had no choice.

4.39   Ultimately, Ms. Gonzalez was able to break free of the coyotes.   She still did not know the location of her daughter, so she went to US Immigration.   US Immigration was able to help Ms. Gonzalez reunite with her daughter in the United States.

4.40   The United States Immigration Service, however, remanded Ms. Gonzalez into custody for deportation proceedings.

**Ms. Gonzalez Goes Through the Deportation Process**

4.41   The United States treats immigrants from Mexico differently from those immigrations from Central America or other locations further south.

4.42   Immigrants from Mexico are sent to a place called a "yelera."  At the yelera, Ms. Gonzalez was given the choice of accepting or fighting her deportation.

4.43   This time, Ms. Gonzalez decided to seek a visa pursuant to her rights under the immigration laws and she informed the authorities.

4.44   Because of her decision to assert her rights under the law and obtain a visa, the United States initially sent Ms. Gonzalez to the Laredo Detention Center in Laredo Texas.

4.45   The Laredo Detention Center is a facility that is owned and operated by CoreCivic for the benefit of the United States of America and specifically for the United States Immigration and Customs Enforcement, ("ICE").

4.46   Because Ms. Gonzalez had been deported once before, she was required to stay in the detention center while her case worked its way through the administrative and legal process.

4.47   Ms. Gonzalez was in the Laredo Detention Center form May 10, 2016 through May 14, 2016.

4.48   ICE then transferred Ms. Gonzalez to the Hutto Residential Detention Center ("Hutto") in Taylor, Texas.  Ms. Gonzalez was in Hutto for approximately a month and one-half, through June 27, 2016.  Then, ICE transferred Ms. Gonzalez back to the Laredo Detention Center.

4.49   Ms. Gonzalez was held in the Laredo Detention Center from June 27, 2016 through August 1, 2017, when she was released.

**Ms. Gonzalez is Forced To Work**

4.50   CoreCivic runs forced labor camps using the immigration detainees as their workforce.

4.51   CoreCivic set up a process and a system based upon the use of forced labor in order to maximize its profits and cut labor costs by forcing immigration detainees to work for the company as low-paid or unpaid labor or face the consequences.

4.52   Specifically, the immigration detainees were forced to work, and if they refused, they were subjected to various punishments, including but not limited to solitary confinement and deprivation of facilities.  Ms. Gonzalez was forced into this labor and observed many of her fellow detainees being forced into such work.

4.53   CoreCivic paid Ms. Gonzalez either one dollar or two dollars per day as "wages" for the forced labor.

4.54   Some of the individual detainees, upon information and belief, were not paid any wage at all.

**Laredo Detention Center:  Threats and Intimidation Create Forced Labor**

4.55   Prior to obtaining her visa, Ms. Gonzalez spent the majority of her time in the Laredo Detention Center forced labor camp.

4.56   Ms. Gonzalez worked virtually every day.  The work was demeaning, back-breaking, and forced.  Ms. Gonzalez worked in the kitchen, sorting clothing, and other duties. She earned $1.00 per day for a while and was later bumped up to $1.50 per day.  Ms. Gonzalez worked every single day.

4.57   CoreCivic continually told Ms. Gonzalez and the other immigration detainees that the work was voluntary.  However, the work was only "voluntary" as long as the immigration detainee was willing to suffer the consequences of refusal.

4.58   CoreCivic made it very clear, through words and deeds, that unless the detainees worked, CoreCivic would increase their misery.

4.59   CoreCivic, for example and without limitation, would deny privileges such as a toothbrushes or toothpaste.  Women were frequently made to wait hours and hours until sanitary or other feminine products were made available if they did not work.  This action was not only dehumanizing and humiliating, but it created a health hazard that endangered the remaining detainees.

4.60   Personal hygiene products were denied to detainees if they did not work or if they asked for days off.

4.61   The CoreCivic guards would ignore or deny requests by detainees for basic human services who did not work or asked to take days off.

16

4.62   These actions were intended to and actually did intimidate the detainees.  These actions provided specific and sometimes painful consequences to not agreeing to and submitting to the forced labor requirements of CoreCivic.

4.63   In stark contrast, if a detainee worked, then that detainee could ask for needed items and the CoreCivic employees would provide them without any delay or hassle.

**Hutto Residential Detention Center Was Also A Forced Labor Camp**

4.64   CoreCivic owns and operates the Hutto Residential Detention Center in Encinal, Texas. Hutto's facilities were nicer than the Laredo Detention Center and there was more freedom during off time, but the work was the same -- forced labor -- and was conducted using the same system of reward and punishment.

4.65   The Hutto Residential Center was where Ms. Gonzalez was able to contact a lawyer to begin the process that would result in her obtaining a T-1 Visa.

4.66   CoreCivic forced Ms. Gonzalez to work for the same dollar and/or two dollars a day.  Individuals were forced into labor with scarcely any payments at all.

4.67   CoreCivic again established and perpetuated a system that created a business model dependent upon the forced labor of the detainees in order to create and maintain high profit margins and low labor costs.

4.68   CoreCivic would punish individual detainees who refused to work or requested time off in the same fashion as they did at the Laredo Detention Center.

4.69   CoreCivic's practices at Hutto were demeaning and humiliating.

## Punishment For Complaints About Worms in the Food

4.70   At times, CoreCivic demonstrated its complete power over the immigrant detainees.

4.71   Ms. Gonzalez discovered worms in her food during one meal.  Ms. Gonzalez prepared a written complaint and got other detainees to sign.

4.72   In response to this valid complaint about tainted food, CoreCivic employees responded to the complaint by stating stated that one of the women in the Laredo Detention Center had chickenpox and placing all of the women in quarantine, sending them to the La Salle County Regional Detention Center.

4.73   The La Salle Detention Center was particularly foul.  The food provided to the detainees was spoiled and the water was contaminated with dog hairs because of the canine units that patrolled the area.

4.74   Effectively, CoreCivic manufactured a false chickenpox outbreak to punish Ms. Gonzalez and the other detainees for speaking out and complaining about a lack of edible food.

## Ms. Gonzalez's Legal Status:  Human Trafficking Visa

4.75   On July 31, 2017, Ms. Gonzalez had her final court date and was granted a T-Visa which she received in October of 2017.

4.76   Ms. Gonzalez now resides and works -- entirely legally -- in Harris County.

## 5.

## CLASS ACTION ALLEGATIONS

5.1   Ms. Gonzalez brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all members of a class of immigrant detainees who were required to participate in coerced, involuntary, and unpaid or underpaid work during the time that they were in residence at CoreCivic facilities.

The Class will be preliminarily defined as:

All civil immigration detainees who performed labor for no pay or at a rate of compensation of $1.00 to $2.00 per day for work performed for CoreCivic at any detention facility owned or operated by it from February 20, 2007 to the applicable opt-out date, inclusive.

5.2   Excluded from the Class are the Defendant herein, law enforcement agencies and personnel, members of the foregoing persons' immediate families and their legal representatives, heirs, successors, or assigns, and any entity or person in which Defendant has or had a controlling or supervisory interest or control over at all relevant times.

5.3   Plaintiff satisfies the numerosity, commonality, typicality, adequacy, and predominance prerequisites for suing as representative parties pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity**

5.4     The exact number of proposed Class Members is currently not known, but is believed to consist of thousands if not tens of thousands of former or current CoreCivic detainees who have been forced and/or coerced to work, whether for one or two dollars a day or no pay whatsoever, making joinder of each individual Class Member impracticable.

**Commonality**

5.5     Common questions of law and fact exist for the proposed Class' claims and predominate over questions affecting only individual Class Members.  Common questions include, without limitation:

a.      whether Plaintiffs and Class Members performed compensable work and were considered employees being suffered or permitted to work;

b.      whether Plaintiffs and the Class Members were unpaid, paid $1 or $2 per day for their labor;

c.      whether forcing and coercing Plaintiffs and the Class Members to perform forced labor for free or for $1 or $2 per day constitutes a violation of each Class Members' TVPA, human rights, United States labor law, and other statutory and common law rights as set forth herein;

d.      what monitoring, training, limiting, and supervisory policies, procedures, and practices should CoreCivic be required to implement to ensure

ongoing protection of each Class Member's TVAP, and other legal rights and as part of any prohibitory and mandatory injunctive relief ordered by the Court;

e.      whether CoreCivic acted deliberately or negligently by unlawfully, without limitation:

i.      failing to adequately protect Class Members TVPA and other rights;

ii.     forcing and coercing detainees to perform forced labor;

iii.    failing to follow applicable laws; and

iv.     failure to maintain adequate monitoring, training, limiting, and supervisory procedures, policies, procedures, and practices; and,

f.      whether Plaintiff and Class Members may obtain damages, restitution, disgorgement, declaratory, prohibitory and mandatory injunctive relief against CoreCivic.

## **Typicality**

5.6     Plaintiff's claims are typical of the claims of the proposed Class because, among other things, Plaintiff and Class Members legal claims all arise from CoreCivic's unlawful practices, and Plaintiffs and Class members sustained similar injuries and statutory damages as a result of CoreCivic's uniform illegal conduct.

**Adequacy**

5.7     Plaintiff will fairly and adequately protect the interests of the class. Their interests do not conflict with Class Members' interests and they have retained counsel competent and experienced in complex and class action litigation to vigorously prosecute this action on behalf of the Class.  In addition to satisfying the prerequisites of Rule 23(a), Fed. R. Civ. P., Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(2) and (3), Fed. R. Civ. P.

5.8     Common questions of law and fact predominate over any questions affecting only individual Class Members and a Class action is superior to individual litigation because:

a.     The amount of damages available to individual Plaintiffs are insufficient to make litigation addressing CoreCivic's conduct economically feasible in the absence of the Class action procedure;

b.     Individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c.     The Class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

5.9     In addition, Class certification is appropriate under Rule 23(b)(1) or (2) because:

a.      The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for CoreCivic;

b.      The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

c.      CoreCivic has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Class as a whole.

**6.**

## FIRST CAUSE OF ACTION

**Violation of the Trafficking Victims Protection Act**

**18 U.S.C. §§ 1589,** *et seq.*

**(Individually and Class Cause of Action)**

6.1     Plaintiff and Class Members incorporate by reference all foregoing averments of fact as if repeated herein verbatim.

6.2     The Federal Trafficking Victims Protection Act protects individuals such as plaintiffs and Class Members from being forced into labor.  The law reads in pertinent part:

> Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means - - (1) by means of force, threats of force, physical restraint, or threatens of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).

6.3     Plaintiffs and Class Members were forced, coerced, and made to perform labor and services, including working for free or for effectively free at the rates of One or Two Dollars per day by means of:

a.      force, threats of force, physical restraint, and threats of physical restraint;

b.      serious harm and threats of serious harm; and,

c.      abuse and threatened abuse of law or legal process to Plaintiff and the Class Members, and by means of a scheme, plan, pattern, and uniform policy intended to cause Plaintiffs and the Class to believe that, if they did not perform such labor or services, that they would suffer serious harm and/or physical restraint.

d.      Threats and actual acts that exposed the Plaintiff and Class Members to worsening conditions as a threat to continue to work.

6.4    CoreCivic was unjustly enriched by the unlawful practice of forcing and coercing Plaintiff and the Class Members to perform uncompensated or illegally low-wage compensations through human trafficking.  By exploiting these unlawful practices CoreCivic materially and significantly reduced its labor costs and expenses, in addition to increasing its profits.

6.5    CoreCivic violated the law by forcing and coercing Plaintiff and Class Members to engage in labor that was without pay or with illegally low pay in violation of 18 U.S.C. § 1589, *et seq.*

6.6    CoreCivic committed the illegal and unlawful offense(s) of Forced Labor against the Plaintiff and the Class Members under 18 U.S.C. § 1589, *et seq.*

6.7    CoreCivic knowingly and financially benefitted from implementing and participating in a venture, plan, scheme, pattern of conduct, and practice, CoreCivic knew, or should have known, was unlawful and in violation of the Law of the United States of America, 18 U.S.C. § 1589, *et seq.*

6.8    CoreCivic has violated the law and the remedies provided by 18 U.S.C. §§ 1593 and 1595(a) should be imposed and these remedies are sought by Plaintiff and Class Members.

6.9    Specifically, the Court shall order restitution in the full amount of the victim's losses, as determined by the Court.  The full amount of the victim's losses shall be the greater of the gross income or value to the defendant of the victim's

services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act.

6.10   Plaintiff and Class Members are also entitled to damages and reasonable attorney's fees and costs, for which they now sue.

6.11   Plaintiff and Class Members request that the Court issue an order of declaratory relief declaring CoreCivic's practice(s) involving forced labor and human trafficking -- forcing and coercing Plaintiff and Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restrict, deprivation, solitary confinement, and retaliator transfer to other facilities -- to be illegal and unlawful.

6.12   Plaintiff and Class Members request the Court to grant an injunction requiring CoreCivic to cease its unlawful practices described herein and enjoin CoreCivic from forcing and coercing Plaintiffs and the Class Members to perform labor and services under threat of confinement, physical restraint, substantial and sustained restriction, deprivation, solitary confinement, and retaliatory transfer to other facilities.

6.13   Plaintiff and the Class Members request the Court to enter and injunction in connection with the foregoing order that will require CoreCivic to:

a.     Engage a third-party ombudsman as well as internal compliance personnel to monitor, conduct inspection, and audit CoreCivic's safeguards and procedures on a periodic basis;

b.     Audit, test, and train its internal personnel regarding any new or modified safeguards and procedures;

c.     Conduct regular checks and tests on its safeguards and procedures;

d.     Periodically conduct internal training and education to inform internal personnel how to identify violations when they occur and what to do in response; and

e.     Periodically and meaningfully education its personnel and detainees about their labor and human trafficking rights through, without limitation, educational programs and classes upon detention, as well as any steps that must be taken to safeguard such rights.

6.14   Plaintiff and Class Members have suffered damages in an amount to be determined at trial.  Plaintiffs and the Class Members request that the Court enter an order pursuant to 18 U.S.C. § 1595(a) awarding Plaintiffs and the Class Members compensatory and punitive damages.

6.15   Plaintiff and the Class Members request this Court to enter an order pursuant to 18 U.S.C. § 1593 awarding Plaintiff and Class Members mandatory

restitution in addition to the recovery of their reasonable attorney's fees pursuant to 18 U.S.C. § 1595(a).

6.16   Plaintiff and Class Members also seek pre-and-post-judgment interest as permitted by law.  18 U.S.C. § 1595(a).

## 7.

## SECOND CAUSE OF ACTION

### Negligence

### (Plaintiff and Class Members)

7.1   Plaintiff and Class Members incorporate by reference all foregoing averments of fact as if repeated herein verbatim.

7.2   In engaging Plaintiff and the Class Members to provide labor and services, CoreCivic owed a duty to exercise reasonable and ordinary care in complying with all applicable local, state, and federal laws and to furnish a safe working place for its employees.

7.3   This duty includes, but is not limited to, taking reasonable measures to implement and maintain reasonable procedures to provide a safe working

environment and workplace and to protect the rights of Class Members in compliance with applicable law, including but not limited to procedures and policies:

a.      to supervise, restrict, limit, and determine whether any Plaintiffs and the Class Members were subject to forced labor or illegal pay practices by CoreCivic or perform other labor and services under threat of punishment, confinement, physical restraint, and deprivation of liberty;

b.      to notify Plaintiff and Class Members of their rights under the TVPA; and

c.      when and how to notify Plaintiff and the Class Members of CoreCivic's unlawful forced labor practices.

7.4     In providing services to the Plaintiff and the Class Members, CoreCivic owed them a duty to exercise reasonable care in the following manner, including without limitation:

a.      adequately providing a safe working environment and workplace;

b.      adequately protecting the rights of Class Members in compliance with applicable law;

c.      prohibiting forced labor or illegal pay practices with respect to Plaintiff and Class Members and adequately insuring that such practices were not undertaken;

d.      adequately ensuring that Plaintiff and the Class Members had a safe work environment; and

e.      protecting the rights of Plaintiff and the Class Members under the TVPA.

7.5     CoreCivic had a duty and a responsibility to take adequate and reasonable measure to ensure that forced labor and illegal pay practices were not applied to Plaintiff and Class Members.

7.6     The Duty that CoreCivic owed to Plaintiff and Class Members to protect their rights is clarified by the Federal TVPA which recognizes the importance of preventing the crime of trafficking of a person for forced labor or services.

7.7     CoreCivic also had a duty to timely disclose and/or warn Plaintiff and Class Members of their rights under the TVPA, state law, or any other law and applicable regulations.   Timely disclosure is necessary and appropriate so that Plaintiff and Class Members could, among other things, timely pursued and exhausted available remedies, and undertaken appropriate measures to avoid, prevent, or mitigate the violations of their rights under applicable laws.

7.8     There is a causal connection between CoreCivic's failures to take reasonable measures to provide a safe and lawful work environment and timely disclosure of Plaintiff and the Class Members' rights and the injury to Plaintiff and the Class members.

7.9     CoreCivic's breach of its duty to Plaintiff and the Class Members is a proximate cause of damages to Plaintiff and Class Members.

7.10   CoreCivic is legally responsible for such unlawful violations of Plaintiff and the Class Members' human and labor law rights and their right to a safe working environment because it failed to take reasonable measures in connection with such environment.  If CoreCivic had taken reasonable measures in connection with their employment and Plaintiff and Class Members, their legal rights would not have been violated.

7.11   A special relationship exists between CoreCivic and Plaintiff and Class Members.  The Plaintiff and Class Members are immigration detainees who have no choice but to perform the forced labor when and how CoreCivic demands it.  If CoreCivic is not held accountable for failing to take reasonable measures to protect the human rights and labor law rights of its detainees, CoreCivic will not take the steps that are necessary to protect against future violations of such rights.

7.12   It was reasonably foreseeable that if CoreCivic built a system predicated upon forced labor and did not take reasonable measures to protect the human rights and labor law rights of Plaintiff and Class Members that the policy of forcing detainees to work for free or for one or two dollars would violate those rights.

7.13   CoreCivic knew or should have known that its actions would result in violations of the rights of Plaintiff and Class Members.

7.14   CoreCivic breached its duty to exercise reasonable care in providing a safe work environment for, and protecting the human rights and labor law rights of, Plaintiff and Class Members.

7.15   CoreCivic breached its duty by acting as follows, including but not limited to:

a.      failing to implement and maintain adequate measures to safeguard detainees' rights;

b.      failing to monitor its operations to identify unlawful activity;

c.      requiring and/or allowing Plaintiff and the Class to work in an unsafe environment; and

d.      failing to otherwise prevent human rights and labor law abuses.

7.16   CoreCivic breached its duty to timely warn or notify Plaintiffs and the Class Members about its unlawful forced labor and pay practices and programs. CoreCivic has failed to issue any warnings to its current and former detainees affected by these unlawful practices.

7.17   CoreCivic knew or should have known that its practices would violate the law.

7.18   But for CoreCivic's failure to implement and maintain adequate measure to provide a safe working environment for, and protect the human rights and labor law rights of, Plaintiff and the Class members, and its failure to monitor

its operations to identify unlawful forced labor and illegal pay practices, among other violations of labor law, Plaintiff and Class Members' rights would not have been violated and Class Members would not be at a heightened risk of unlawful forced labor and other labor law violations in the future.

7.19   CoreCivic's negligence was a substantial factor in causing harm to Plaintiff and the Class Members, and in violating their human rights and labor law rights.  As a direct and proximate cause and result of CoreCivic's failure to exercise reasonable care and use reasonable measures to provide a safe working environment and safeguard the human rights and labor law rights of Plaintiff and the Class Members, Plaintiff and the Class Members were subjected to forced labor and the labor law violations set forth in this Complaint.  Class Members face a heighted risk of such unlawful practices in the future.

7.20   Neither Plaintiff nor other Class Members contributed to the unlawful conduct set forth herein, nor did they contribute to CoreCivic's unlawful forced labor practices and other labor law violations.

7.21   Plaintiff and the Class Members seek compensatory damages and exemplary damages.  Plaintiff and Class Members seek pre- and post-judgment interest, costs of suit, and other and further relief as this Court deems just and proper.

**8.**

**THIRD CAUSE OF ACTION**

## Unjust Enrichment and/or Quantum Meruit

## (Plaintiff and Class Members)

8.1     Plaintiff and Class Members incorporate by reference all foregoing averments of fact as if repeated herein verbatim.

8.2     CoreCivic received a benefit from the Plaintiff and Class Members.

8.3     CoreCivic retained the fruits of the labor and other actions of the Plaintiff and Class Members and retained this benefit at the expense of the Plaintiff and Class Members.

8.4     CoreCivic was the recipient of valuable services rendered by Plaintiff and the Class Members.  CoreCivic accepted such valuable services.

8.5     Plaintiff and Class Members intended to be paid properly and legally.

8.6     CoreCivic knew or should have known that Plaintiff and the Class Members expected to be paid properly and legally.

8.7     Plaintiff and Class Members are entitled to recover the amounts by which CoreCivic was unjustly enriched or the quantum meruit of the fruits of their labor.

8.8     Plaintiff and Class Members seek appropriate damages determined by the finder of fact and/or jury.

8.9     Plaintiff and Class Members, to the extent permitted by law, seek recovery of a reasonable and necessary attorney's fee and costs.

## JURY DEMAND

Plaintiff and Class Members hereby demand trial by jury of all facts permitted under their Seventh Amendment Rights.

## PRAYER FOR RELIEF

Martha Gonzalez, individually and on behalf of the proposed Class, request that the Defendant be service with citation and service of process and required to answer with the appropriate time and that the Court:

a.      Certify this case as a class action on behalf of the Class Members defined above, appoint Martha Gonzalez as class representative, and appoint The Buenker Law Firm as Class counsel;

b.      Award declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

c.      Award injunctive relief as is necessary to protect the interests of Plaintiff and the Class Members;

d.      Award restitution, damages, treble damages, and punitive damages to Plaintiff and Class Members in an amount to be determined at trial;

e.      Order disgorgement of CoreCivic's unjustly acquired revenue, profits, and other benefits resulting from its unlawful conduct for the benefit of Plaintiff and Class Members in an equitable and efficient manner determined by the Court;

f.      Order the imposition of a constructive trust upon CoreCivic such that its enrichment, benefit, and ill-gotten gains may be allocated and distributed equitably by the Court to and for the benefit of Plaintiff and the Class Members;

g.      Award Plaintiff and Class Members reasonable attorney's fees and costs;

h.      Award Plaintiffs and Class Members pre- and post-judgment interest in amounts permitted by law; and,

i.      Award such other and further relief that Plaintiff and Class Members are entitled under law and equity.

Respectfully Submitted,

**THE BUENKER LAW FIRM**

*/s/ Thomas H. Padgett, Jr.*
Thomas H. Padgett, Jr.
Attorney-in-Charge
TBA No. 15405420
tpadgett@buenkerlaw.com
Josef F. Buenker
TBA No. 03316860
jbuenker@buenkerlaw.com
2060 North Loop West, Suite 215
Houston, Texas 77018
713-868-3388 Telephone
713-683-9940 Facsimile

**ATTORNEYS FOR**

**PLAINTIFF and CLASS MEMBERS**