# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| MARTHA GONZALEZ, individually and on behalf of all others similarly situated, § § § § | | |
| Plaintiffs, § § | | |
| § | CAUSE NO. 1:18-cv-169-LY | |
| v. § § | | |
| CORECIVIC, INC., § § | | |
| Defendant. § | A Jury is Demanded | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND ALTERNATIVE MOTION FOR LEAVE TO AMEND

Martha Gonzalez, individually, and on behalf of all others similarly situated, opposes the Motion to Dismiss filed by CoreCivic, Inc. Alternatively, Ms. Gonzalez seeks leave to amend.

### Questions Presented

1. CoreCivic has a contract with the federal government. CoreCivic argues that contract entitles it to sovereign immunity. The United States Supreme Court disagrees and held that private companies—specifically private prisons such as CoreCivic, do not generally enjoy sovereign immunity. CoreCivic, at this stage, has not provided evidence which would permit the Court to award sovereign immunity to CoreCivic. Should CoreCivic be awarded sovereign immunity and Ms. Gonzalez's claims be dismissed?

2. The Trafficking Victims Protection Act creates liability for whoever profits financially from a trafficked individual. Ms. Gonzalez was a trafficked individual. CoreCivic, Inc., profited by using Ms. Gonzalez as forced labor. Should Ms. Gonzalez's claims against CoreCivic be dismissed because it asserts the legislative history provides clues that CoreCivic might not be a "target" of the TVPA?

3. Ms. Gonzalez was an immigrant detainee who was not charged with a crime. Ms. Gonzalez was being held pending her application for asylum which was ultimately granted. CoreCivic asserts an *in loco parentis* relationship with Ms. Gonzalez as justification to force Ms. Gonzalez to labor while detained. Should Ms. Gonzalez's claims against CoreCivic be dismissed because CoreCivic asserts a special relationship?

4. Ms. Gonzalez provided valuable services to CoreCivic. Ms. Gonzalez expected to be paid and CoreCivic expected to pay Ms. Gonzalez. CoreCivic paid Ms. Gonzalez a dollar to a dollar fifty a day. If Ms. Gonzalez has alleged, with facts, the elements of unjust enrichment, should her claims be dismissed?

## SUMMARY OF ARGUMENT

A private company violates federal law when it profits financially from individuals who have been trafficked to the United States. A private company also violates common law when it profits from the labor of others unjustly. The facts pleaded in the complaint before the court show a private company profiting financially from the labor of the plaintiff and others similarly situated.

The TVPA applies to CoreCivic based on a plain reading of the statute. Clues as to legislative history and other opinions about the meaning of the statute do not

justify dismissal. CoreCivic is not entitled to sovereign immunity based upon a long-standing precedent and holdings of the United States Supreme Court. *Richardson v. McKnight*, 521 U.S. 399 (1997).

CoreCivic's relationship with Ms. Gonzalez was not *in loco parentis*. The relationship did however, implicate the prohibition against forced labor and/or provided unjust enrichment to CoreCivic. The state law derivative claims should be maintained.

The question before the court in this case is whether plaintiff has pled facts sufficient to put the defendant on notice of her claims and the claims of others similarly situated. The four corners of the complaint show the plaintiff has done just that. The motion to dismiss must be denied.

## ARGUMENT AND AUTHORITY

### 1.

### Facts Supporting Relief

The facts in this case are properly and specifically detailed in the Original Complaint.

In summary, Ms. Gonzalez was trafficked to the United States via a long-standing conduit of coyotes and other individuals engaged in the smuggling and trafficking of humans. Ms. Gonzalez came into the custody of the United States and

was detained during the pendency of her application for asylum.  Ms. Gonzalez was not charged with any crime and was not a prisoner or convicted individual.

CoreCivic, through words, actions, and intimidation, forced Ms. Gonzalez to labor while she was detained.  Ms. Gonzalez observed many other detainees being forced to work.  CoreCivic paid Ms. Gonzalez anywhere from a dollar to a dollar fifty a day.

CoreCivic posts massive profits and maintains, on a systemic basis, understaffed prisons and utilizes the immigrant detainees as a supplemental (and cheap) labor force.

This lawsuit seeks, on behalf of Ms. Gonzalez and others similarly situated, to hold CoreCivic accountable for its actions.

**2.**

## CoreCivic Cannot Escape the TVPA

A. The TVPA Specifically Applies to CoreCivic

The plain language of the TVPA is clear.  CoreCivic's argument that legislative history provides clues that the TVPA does not apply are without merit.[1]

---

[1] Enacted statutory text, where it conflicts with a proffer of potential extrinsic evidence of legislative history or purpose, nevertheless prevails in all cases. *See, e.g.*, *In re Sinclair*, 870 F.2d 1340, 1343 (7th Cir. 1989) (Easterbrook, J.).  CoreCivic's "clues" about what the statute mean are irrelevant when compared to the plain words of the statute. *Cf.* Judge Leventhal's epigram, often quoted by Justice Scalia, that "the intelligent use of legislative history is like walking into a crowded cocktail party and looking over the heads of the guests to find your friends . . . ." Nicholas S. Zeppos, *Legislative History and the Interpretation of Statutes: Toward a Fact-Finding Model of Statutory Interpretation*, 76 Va. L. Rev. 1295, 1309–10 (1990).

18 U.S.C. § 1595 authorizes a civil action for any "individual who is a victim of a violation of section 1589" against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" § 1589.[2]

Ms. Gonzalez alleges CoreCivic knowingly benefited financially by receiving valuable labor in violation of § 1589. When CoreCivic forced Ms. Gonzalez to work, it received value and paid her one dollar or one dollar fifty per day. This means that CoreCivic, by using the immigrant detainees in its care as laborers, was able to avoid regular wages, benefits, and other payments to regular employees. The cost savings are dramatic when a business utilizes a work force such as Ms. Gonzalez and the class members. Hence, CoreCivic has profited financially from a trafficked person or persons.

Arguing against logic, CoreCivic states that the TVPA was not meant to apply to it because the TVPA does not apply to the federal government.[3] That is not the inquiry. The question is whether Ms. Gonzalez has properly pled facts sufficient to meet the elements of a cause of action and whether those facts are sufficient to give

---

[2] "Whoever" includes corporations. 1 U.S.C. § 1. CoreCivic, Inc. is a corporation. See Compl. at ¶ 2.2.

[3] While a significant portion of this response deals with sovereign immunity, Ms. Gonzalez notes that CoreCivic never actually comes out and says it seeks qualified or sovereign immunity. Instead, CoreCivic attempts to share the immunity with the federal government. Legally, CoreCivic does not have the right or ability to seek immunity.

CoreCivic notice. Here, CoreCivic forced Ms. Gonzalez and others to labor using one or more of the following means:

> [it is forced labor for whoever to] knowingly provide or obtain the labor or services of a person by any one of, or by any combination of the following means:
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint

18 U.S.C. § 1589(a). The actions described by Ms. Gonzalez, both what happened to her and what she observed, meet any one of these requirements above. CoreCivic forced and coerced Ms. Gonzalez and the putative members of the class to labor.

B.   Ms. Gonzalez's Complaint Alleges a Forced Labor Scheme

Ms. Gonzalez's complaint alleges in detail what CoreCivic did to her and other similarly situated individuals. On a regular basis and throughout the time CoreCivic held Ms. Gonzalez in detention, Ms. Gonzalez and others were required to perform manual labor in and around the facilities where she was detained. The manual labor was excessive and beyond a simple tidying up of some personal space.

6

Ms. Gonzalez and others were given various and assorted duties, including but not limited to cleaning, cooking, laundry, and other jobs. These were not simply personal hygiene or "cleaning up her cell." Ms. Gonzalez and others cooked for the entire facility, three meals a day, cleaned the bathrooms, landscaped the environment, painted, maintained equipment, mopped and swept floors, among other duties. These duties were well beyond the scope of any personal housekeeping and/or upkeep. *See, e.g.*, Compl. at ¶¶ 4.5–4.7.

CoreCivic forced Ms. Gonzalez and others to engage in these actions and labor under threats of punishment such as solitary confinement, denial of benefits and services, and physical threats. *See, e.g.*, Compl. at ¶ 4.8 *et seq.*

The TVPA specifically identifies such actions as "coercion." *See* 22 U.S.C. § 7102(2) (defining "coercion" to include, inter alia, schemes intended to cause a person that failure to perform an act would result in serious harm to or physical restraint against any person"). *See also, e.g.*, *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.,* 790 F. Supp. 2d 1134, 1137 (C.D. Cal. 2011) (finding that district courts have a "duty . . . to provide a forum for the alleged victims of forced labor, regardless of the severity of the alleged circumstances" given the clear congressional intent in its drafting, which "shows the broad reach of the TVPA and the broad class of individuals whom it protects"). Ms. Gonzalez detailed what happened to her and what she observed happening to other similarly situated individuals. These

allegations are sufficient to establish that Ms. Gonzalez was forced, coerced, and witnessed other putative class members being forced and coerced, to engage in labor. Nothing here is a "threadbare recital" or "formulaic recitation." *See generally, e.gg., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2006).

At this stage of the proceeding, Ms. Gonzalez has properly met all of the requirements of the United States Supreme Court. The factual allegations are specific and sufficient to put CoreCivic on notice of Ms. Gonzalez and the putative class claims. CoreCivic is involved in this form of litigation across the country. There are no surprises in Ms. Gonzalez's complaint.

C.    Involuntary Servitude Statutes Must Be Broadly Interpreted

There is some legislative history which can inform this Court's decision. These statutes against involuntary servitude weigh in favor of recognizing a cause of action. *See, e.g.*, 22 U.S.C. § 7101(b)(13) ("Involuntary servitude statutes are intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion."); *id.* at (16) ("In some countries, enforcement against traffickers is . . . hindered by official indifference . . . and sometimes even by official participation in trafficking); *id.* at (17) ("Existing laws often fail to protect victims of trafficking, and because victims are often illegal immigrants in the destination country, they are repeatedly punished more harshly than the traffickers themselves."); *id.* at (19) Victims of severe forms of trafficking should not be

inappropriately incarcerated, fined, or otherwise penalized solely for unlawful acts committed as a direct result of being trafficked, such as using false documents, entering the country without documentation, or working without documentation."); Compl. at ¶ 4.32 *et seq.*

CoreCivic would have this Court parse clues from unrelated court cases and legislative history to make a decision that CoreCivic might not be the target of the statute. Such construction flies in the face of the text and important legislative purpose of the TVPA and similar statutes. The text and purpose of the statute require a denial of the motion to dismiss.

### 3.

### As A Matter of Law, CoreCivic is Not Immune

A.   Settled Case Law and Precedent Make Clear:  No Sovereign Immunity

The United States Supreme Court has decided this issue. In *Richardson v. McKnight*, 521 U.S. 399 (1997), the Supreme Court held that sovereign immunity does not to apply to a private prison management company, i.e., like CoreCivic. The Supreme Court cited case law going back to at least 1889 and arguably into the Middle Ages. CoreCivic is not entitled to sovereign immunity as a private prison contractor. *Richardson*, 521 U.S. at 405–07.

B.     CoreCivic's "Functions" Do Not Matter.

CoreCivic argues that because it engages in functions that are sometimes done by ICE or the Federal Government, it is permitted the immunity of the sovereign.[4] This argument has been soundly rejected by other courts that have examined the issue.[5]  As the United States Supreme Court has held, the functions of the private prison contractor do not transform that contractor into the sovereign.  *Richardson*, 521 U.S. 408–09.  That analysis applies for the narrow question of whether absolute or qualified immunity applies to those exercising particular government functions, none of which resemble those at issue in the case before the Court.  *See id.*

CoreCivic is a private company in competition with others, and CoreCivic does not have the same risks or concerns that are usually associated with courts'

---

[4] There are scenarios where a government contractor can be immune.  CoreCivic has not met that standard and cannot do so without specific evidence, which is not to be considered in a Motion to Dismiss See *Yearsley v. Ross Const. Co.*, 309 U.S. 18 (1940) (contractor built a dike on the Missouri river; landowner's land damaged; contractor shielded from liability because it did its work by direction of U.S. government and pursuant to Act of Congress).  Simply put, just being a federal contractor, however, is not enough to assert so-called "derivative sovereign immunity," which does not apply where the contractor violates federal law or the government's instructions.  *See generally Campbell-Ewald Co. v. Gomez*, 577 U.S. ___ (2016) (contractor with Navy violated Telephone Act in recruiting, as well as Navy's instructions to contact only those who had opted in; no sovereign derivative immunity).

[5] *See, Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Ca. May 14, 2018) (denying CoreCivic's motion to dismiss the Plaintiff's TVPA claim); *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 1125 (D. Colo. 2015), *aff'd on other grounds in Menocal v. GEO Grp., Inc.*, No. 17-1125 (10th Cir. Feb. 9, 2018) (slip op.).

10

findings of immunity.[6] Part of the reason for immunity is that a suit for damages against a government employee might "dampen the ardor of all but the most resolute, or the most irresponsible," *see Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (L. Hand., J.) (*see also, e.g.*, *Procunier v. Navarette*, 434 U.S. 555 (1978) (public prison guards immune)).  Therefore, some government actors enjoy sovereign immunity.  Private companies running private facilities such as CoreCivic enjoy no such protection. *See Richardson*, 521 U.S. at 413.  "[T]he various incentives characteristic of the private market in that case ensure[] that the guards would not perform their public duties with unwarranted timidity or be deterred from entering that line of work."  See *Filarsky v. Delia*, 132 S.Ct. 1657, 1667 (2012).

Every case cited by CoreCivic is distinguishable and irrelevant to the issues before the Court. This is not a case of a father beating his children for not doing chores.  See Def.'s Mot. Dismiss at 7 *et seq*. discussing, inter alia, *United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014).  This is not a case of any personal chores, as discussed in all the pre-TVPA case law Defendant cites. *See id.* at 11–13.

---

[6] In *Richardson*, the defendant asserting (and losing) sovereign immunity was "a private firm" "systematically organized to assume a major lengthy administrative task (managing an institution)" "with limited direct supervision by the government" "undertak[ing] that task for profit" "in competition with other firms."  *Id.* at 413. These factors "combined sufficiently to mitigate the concerns underlying recognition of government immunity" under 42 U.S.C. § 1983, and there is no reason to depart from this law or its reasoning here.

In fact, no Court that has considered this issue has ruled in CoreCivic's favor. *See Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018) (denying CoreCivic's motion to dismiss the plaintiffs' TVPA claim). Other private detention center companies have lost these arguments over and again as well. *See, e.g., Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015), *aff'd on other grounds in Menocal v. GEO Grp.*, Inc., No. 17-1125 (10th Cir. Feb. 9, 2018), slip op. available at https://www.ca10.uscourts.gov/opinions/17/17-1125.pdf (last visited July 24, 2018) (denying motion to dismiss TVPA claims against private detention contractor).

C.     Imposing a Rule of Lenity Is Improper.

CoreCivic essentially argues that the TVPA could not have been intended to "criminalize" its behavior in forcing the labor of immigrant detainees. Of course, this is not a criminal case nor is the TVPA a criminal statute. Therefore, CoreCivic's attempt to portray itself as simply an innocent federal contractor is incorrect. CoreCivic is a for-profit company that is profiting extensively from the use of forced labor in its institutions.

The rule of lenity is a rule of construction in criminal law. *See, e.g., Callahan v. United States*, 364 U.S. 587, 596 (1961). There is no ambiguity to resolve and there is no reason to depart from the statutory text. See *United States v. Rodriguez-Rios*, 14 F.3d 1040, 1044 (5th Cir. 1994) ("We are authorized to deviate from the

literal language of a statute only if the plain language would lead to absurd results, or if such an interpretation would defeat the intent of Congress."), *cited in* Def.'s Mot. Dismiss at 7.

A Rule 12(b)(6) motion is not an appropriate vehicle to decide this question, whether it is a question of statutory interpretation or it is a question of fact as to whether the application of the statute to CoreCivic would lead to an absurd result. Either way, the motion to dismiss should be denied.

**4.**

**CoreCivic Has Been Unjustly Enriched through Forced Labor**

Texas law recognizes a claim for unjust enrichment (or quantum meruit). *Excess Underwriters at Lloyd's v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W. 3d 42, 49 (Tex. 2008); *In re Kellogg Brown & Root, Inc.* 165 S.W.3d 732, 740 (Tex. 2005) (holding quantum meruit to be an equitable theory of recovery intended to prevent unjust enrichment when there is implied agreement to pay for benefits received).

CoreCivic is incorrect. Claims may be brought for unjust enrichment and this case is specifically the type of case where unjust enrichment is properly pled. Whether Gonzalez stated the right magic words of "restitution," "quantum meruit," etc., in conjunction with her claim to prevent CoreCivic's unjust enrichment, does not matter under the liberal pleading standards of the Federal Rules of Civil

Procedure. *See* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 15(c)(3) cmt. (noting "liberal pleading practices secured by Rule 8"); *Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App.–Fort Worth 2006), *rev'd on other grounds*, 240 S.W.3d 869 (Tex. 2007) (holding that the fact that plaintiff "did not use magic words" in pleading for a "money had and received claim" in asserting that defendant had been unjustly enriched was "not fatal" to the claim). *See also, e.g.*, *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) ("Courts may look to—they must look to—the substance of a complaint's allegations . . . . Otherwise, [statutory] enforcement would [be] reduced to a formalistic search through the pages of the complaint for magic words . . . .").

Gonzalez has, in any event, stated a claim upon which relief can be granted under Texas law. *See, e.g., HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998); *see also ED &F Man Biofuels Ltd v. MV FASE*, 728 F. Supp. 2d 862 (S.D. Tex. 2010) ("The Texas Supreme Court has spoken of a 'cause of action' for unjust enrichment and still refers to 'claims for unjust enrichment.') (citations omitted). *Cf. Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539 (N.D. Tex. 2009) (noting that the courts finding no independent cause of action have construed the Texas Supreme Court's language as "simply a reiteration of the well-established principle that a suit for restitution may be raised against a party based on the theory of unjust enrichment") (*quoting Mowbray*, 76 S.W.3d at 680 n. 25).

Should the Court be of the opinion that the Complaint could be clearer in this area, Ms. Gonzalez respectfully requests that she be allowed to replead. In this case, however, Ms. Gonzalez has properly, with facts, put CoreCivic on notice that she seeks recovery of the unjust enrichment that CoreCivic has received based on her and similarly situated individuals' labor.

**5.**

**Alternative Motion for Leave to Replead**

Ms. Gonzalez has met the requirements put forth by the United States Supreme Court and has satisfied the rules of civil procedure with respect to pleading her causes of action.

The Complaint provides amply well pleaded facts and should not be dismissed at the pleadings stage because the legal theories presented might possibly be stated differently. *See, e.g., Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346 (2014) (per curiam). CoreCivic's motion to dismiss, therefore, must be denied.

If, however, the Court would grant it, it should do so without prejudice, and with leave to replead. *See* Fed. R. Civ. P. 15(a)(2). *See generally, e.g., Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) ("The Supreme Court has explicitly disapproved of denying leave to amend without adequate justification.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**6.**

**The Standard for Review for Motions to Dismiss**

In reviewing a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, the court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

The question is whether the plaintiff alleges enough factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation and internal quotation marks omitted).

**7.**

**Conclusion and Prayer**

CoreCivic has advanced these arguments before and lost. The reason is that CoreCivic is not entitled to a dismissal at this stage. The TVPA applies to CoreCivic. Ms. Gonzalez has pled facts sufficient to assert a cause of action against CoreCivic under the TVPA and/or restitution or unjust enrichment.

Ms. Gonzalez prays that the motion to dismiss be denied, and for such other and further relief to which she has shown herself entitled.

Respectfully submitted,

**THE BUENKER LAW FIRM**

*/s/ Thomas H. Padgett, Jr.*
Thomas H. Padgett, Jr.
Attorney-in-Charge
Texas Bar No. 15405420
tpadgett@buenkerlaw.com
Vijay A. Pattisapu
Texas Bar No. 24083633
vijay@buenkerlaw.com
Josef F. Buenker
TBA No. 03316860
jbuenker@buenkerlaw.com
2060 North Loop West, Suite 215
Houston, Texas 77018
713-868-3388 Telephone
713-683-9940 Facsimile

**ATTORNEYS FOR
PLAINTIFF and CLASS MEMBERS**

## CERTIFICATE OF SERVICE

I certify that on July 24, 2018 I caused a copy of the foregoing document and attachment to be filed with the Clerk of Court via ECF, which will serve opposing counsel of record.

*/s/ Vijay A. Pattisapu*
Vijay A. Pattisapu