IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MARTHA GONZALEZ, individually and on behalf of all others similarly situated, | § § § |
| Plaintiffs, | § CAUSE NO. 1:18-cv-00169-LY |
| v. | § § |
| CORECIVIC, INC., | § § |
| Defendant. | § § |

**DEFENDANT CORECIVIC'S REPLY IN SUPPORT OF
MOTION TO DISMISS**

Plaintiff does not respond at all to four arguments made in the Motion to Dismiss. Separate and apart from its argument that the TVPA does not apply—as a matter of law—in the immigration detention setting, CoreCivic moved to dismiss that claim to the extent it was based on: **(1)** 18 U.S.C. §§ 1589(a)(1) (force, threatened force, physical restraint, or threats of physical restraint) and (3) (abuse or threatened abuse of legal process), *see* Dkt. 18 at 13-14; and **(2)** allegations prior to December 23, 2008, *id*. at 14-15. CoreCivic also moved to dismiss: **(3)** Plaintiff's negligence claim as derivative of the TVPA claim, *id*. at 15; and **(4)** all claims based on alleged conduct at the La Salle County Regional Detention Center, *id*. at 17.

Thus, regardless of the Court's ruling on the applicability of the TVPA and viability of the unjust enrichment claim, it should dismiss: the TVPA claim and negligence claim to the extent it is based on §§ 1589(a)(1) or (3); the TVPA claim to the extent it is based on allegations prior to December 23, 2008; the entire negligence claim (as derivative) if the Court dismisses the entire TVPA claim; and all claims to the extent they are based on alleged conduct at La Salle Regional Detention Center. *See Barrett v. Nationstar Mortgage*, LLC, 4:13-CV-744-C, 2014

WL 12584310, at *1 (N.D. Tex. Jan. 29, 2014) (ruling that the lack of a response to an argument in a motion to dismiss is "an indication of [plaintiff's] concession that dismissal is appropriate"). The Court should reject the arguments Plaintiff did make for the following reasons.

## I. THE COURT SHOULD DISMISS PLAINTIFF'S TVPA CLAIM.

**1.** Plaintiff first argues that the plain language of the statute controls, and that the Court cannot consider the history, context, or codified purpose of the TVPA in deciding its application. That is not the law in the Fifth Circuit. "In construing a statute, the ultimate goal is to discern and enforce Congress' intent." *Almendarez v. Barrett-Fisher Co.*, 762 F.2d 1275, 1278 (5th Cir. 1985). Although the plain language of a statute is the "starting point" to determine congressional intent, it does not end the inquiry. *United States v. Eighty-Three Rolex Watches*, 992 F.2d 508, 511 n.3 (5th Cir. 1993); *see also Watt v. Alaska*, 451 U.S. 259, 265-66 (1981) ("[A]scertainment of the meaning apparent on the face of a single statute need not end the inquiry."); *Hattaway v. United States*, 304 F.2d 5, 9 (5th Cir. 1962) (holding that "literalism" is not an "absolute" or "an end in and of itself" in construing a statute). Indeed, "[l]egislative history is important evidence of Congressional intent." *Id*. Moreover, "'[t]he meaning of statutory language, plain or not, depends on context.'" *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1011-12 (5th Cir. 1996) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995), *disapproved on other grounds by*, *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)); *see In re U.S. for Historical Cell Site Data*, 724 F.3d 600, 618-19 (5th Cir. 2013) (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)) (interpreting a statute depends upon "considering the purpose and context of the statute"). Looking beyond the text of the statute is particularly necessary if the plain meaning would "lead to absurd results" or if "such an interpretation would defeat the intent of Congress." *United States v. Rodriguez-Rios*, 14 F.3d 1040, 1044 (5th Cir. 1994).

This approach is in-line with Supreme Court precedent. In *United States v. Katz*, 271 U.S. 354, 362 (1926), the Supreme Court, in interpreting a criminal statute, held that, where the literal application of a criminal statute "would lead to extreme or absurd results, and where the legislative purpose gathered from the whole act would be satisfied by a more limited interpretation," the "[g]eneral terms descriptive of a class of persons made subject to a criminal statute may and should be limited." In fact, the Supreme Court has consistently refused to apply the plain language of a criminal statute in these circumstances. *See*, *e.g.*, *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916); *United States v. Kirby*, 74 U.S. 482, 486-87 (1868). So has the Fifth Circuit. *See*, *e.g.*, *United States v. Castle*, 925 F.2d 831, 836 (5th Cir. 1991) (citing *Katz*) (rejecting plain language of the Foreign Corrupt Practices Act in light of congressional history).

Plaintiff does not address *Katz* or these principles at all.[1] That is likely because the history and well-documented purpose of the statute illustrate that Congress could not have intended the statute to apply in the immigration detention setting. In fact, Plaintiff makes several concessions that proves that point. She does not disagree that the codified purpose of the TVPA is to target, prosecute, and deter human trafficking. (*See* Dkt. 23 at 8 [quoting portions of 22 U.S.C. § 7101 that confirm this proposition].) She seemingly admits that the federal government cannot be criminally charged or sued under the TVPA. (*See id*. at 5 ["CoreCivic states that the TVPA was not meant to apply to it because the TVPA does not apply to the federal government. That is not the inquiry."].) She admits that the TVPA applies only if the victim has been

---

[1] Plaintiff urges the Court not to invoke the rule of lenity (Dkt. 23 at 12), but CoreCivic is not urging application of that rule now.

"trafficked to the United States."[2] (*Id*. at 2-3, 8-9; *see also id*. at 2 ["The Trafficking Victims Protection Act creates liability for whoever profits financially from a trafficked individual."].) And she does not dispute that it does not apply to personal housekeeping. (*See id*. at 7 ["These duties were well beyond the scope of any personal housekeeping and/or upkeep."].) If the statute does not apply to the federal government—i.e., at facilities operated by ICE—how could it apply at facilities operated by a federal contractor "for the benefit of" ICE?[3] (Dkt. 1, § 4.45.) If it applies only in circumstances involving human trafficking, how could it apply to immigration detainees in lawful custody of the United States government? And if it does not apply to personal housekeeping chores, why would it apply to other chores (e.g., cooking, laundry, etc.)? Her failure to even attempt to answer these questions is telling.

  **2.** Because Plaintiff refuses to go beyond the statute's plain language, she provides no rebuttal to most of CoreCivic's arguments. For example, Plaintiff does not square Congress's decision to exclude the federal government from the definition of "whoever" in 1 U.S.C. § 1 with

---

[2] On this point, Plaintiff states that she qualifies because she was "trafficked to the United States via a long-standing conduit of coyotes and other individuals engaged in the smuggling and trafficking of humans." (Dkt. 23 at 3.) Even if true, however, she does not allege that CoreCivic participated in that human-trafficking ring, much less knowingly. *See* 18 U.S.C. § 1595(a) (imposing civil liability against "whoever *knowingly* benefits … from *participation* in a *venture* which that person *knew or should have known* has engaged in an act in violation of" § 1589) (emphasis added). Thus, under Plaintiff's theory, CoreCivic cannot be liable.

[3] Plaintiff devotes a significant portion of her response arguing that CoreCivic is not entitled to "immunity" on this claim. (Dkt. 23 at 1, 3, 5 n.3, 9-11.) But CoreCivic's Motion does not argue immunity (sovereign, qualified, or derivative). Its argument is that Congress could not have intended to criminalize labor by immigration detainees in lawful custody because it delegated that function to the Executive Branch. And it would be illogical to conclude that the statute permits conduct done by the federal government, but criminalizes it if its contractors engage in the same conduct. CoreCivic will argue immunity at the appropriate time (if necessary) after conducting the requisite discovery. Plaintiff's supplemental authority is inapposite for this reason as well. (Dkt. 26.) The court in *Novoa v. The GEO Group, Inc.*, No. 5:17-cv-02514-JGB-SHK (C.D. Cal. Aug. 22, 2016), denied the defendant's argument that it was entitled to derivative sovereign immunity because it required the development of additional facts. (Dkt. 26-1.)

her argument that the term "whoever" in the TVPA includes a private contractor performing a federal function at the direction of the federal government. She does not explain how Congress knew (and expected) immigration detainees in ICE custody to work while in custody, even for no pay at all, *see* 8 U.S.C. § 1555(d); Department of Justice Appropriation Act, Pub. L. No. 95-86, 91 Stat. 426 (1978), yet did not amend or override either one contemporaneously with the enactment of the TVPA to permit allowances only for "*voluntary* work performed." The fact that it did not amend suggests that Congress never intended the TVPA to apply in the custodial setting. Finally, Plaintiff does not explain why Congress would expressly allow pretrial detainees to perform housekeeping tasks in their personal and community living areas, 28 C.F.R. § 545.23, yet criminalize the same tasks by immigration detainees.

Courts "assume that Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). And statutes "must be construed so as to harmonize with other statutes." *Lehman v. Graham*, 135 F. 39, 42 (5th Cir. 1905). These statutes and regulations further corroborate that Congress did not intend for the TVPA to apply to labor performed by immigration detainees in the custodial setting.

**3.** Plaintiff attempts to distinguish *United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014), by asserting, "This is not a case of a father beating his children for not doing chores." (Dkt. 23 at 11.) But CoreCivic cited *Toviave* for its common-sense analysis and refusal to rely solely on the plain language of the TVPA in light of its history and purpose. Indeed, other courts have looked beyond the plain language as well. *See*, *e.g.*, *United States v. McTague*, No. 5:14-CR-055, 2017 WL 1378425, at *5 (W.D. Va. Apr. 10, 2017) (refusing to literally apply plain language of TVPA, explaining "fundamentally, the omitted meaning of which the defendants complain may be reliably supplied by common sense" and that "[t]he alternative is absurd"

because it would effectively remove criminal assault which forces a victim to perform involuntary labor from the statute's protection); *Plaintiff A v. Schair,* No. 2:11-CV-00145-WCO, 2012 WL 12864367, at *3 (N.D. Ga. Nov. 28, 2012) (refusing to literally apply plain meaning of "any" to stay a civil action for damages under Section 1595(a) pending a foreign prosecution, noting "the legislative history underlying the TVPA's stay provision supports an interpretation that 'any' is limited to any *federal* criminal prosecution").

**4.**     Plaintiff attempts to distinguish the many pre-TVPA cases that did not find it unlawful to require detainees to work in their facility, by stating, "This is not a case of any personal chores." (Dkt. 23 at 11.) That attempt is unpersuasive for at least two reasons.  First, several of the cited cases *did* involve more than personal chores and, in fact, they involved many of the same chores alleged in the Complaint.  *See*, *e.g.*, *Channer v. Hall*, 112 F.3d 214, 215, 219 (5th Cir. 1997) (immigration detainee forced to work in facility's food services department under threat of solitary confinement; in rejecting that claim, the court relied on other cases involving civil detainees "fixing meals, scrubbing dishes, doing the laundry, and cleaning the building"); *Mendez v. Haugen*, CV 14-4792 ADM/BRT, 2015 WL 5718967, at *5 (D. Minn. Sept. 29, 2015) (involving pretrial detainee required "fixing and distributing meals, scrubbing dishes, laundering the sheets and clothing of other inmates, cleaning communal bathrooms and shower stalls, removing trash from common areas, and sweeping, mopping, and vacuuming general-use hallways and rooms").[4]  Second, all these cases support the general proposition that, in a communal custody setting, detainees are expected to assist in cleaning and maintaining the facility in which they live.  This body of caselaw, including binding Fifth Circuit precedent

---

[4] *Toviave*, which post-dates the TVPA, involved more than just personal chores as well. 761 F.3d at 624-25 (washing floors, windows, bathrooms, and dishes, laundry, preparing food, serving guests, and babysitting).

predating the TVPA, is further evidence that Congress did not intend to criminalize such labor in this setting. *See Dresser Indus., Inc. v. United States*, 238 F.3d 603, 614 n.9 (5th Cir. 2001) ("Congress is presumed to be aware of judicial interpretations of the law, and … it is assumed to have acted with awareness of judicial interpretations of prior law.").

**5.** Finally, Plaintiff urges the Court to allow the TVPA claim to proceed because the district courts in *Owino v. CoreCivic, Inc.*, 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018), and *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015), did. (Dkt. 23 at 10 n.5, 12.) Of course, this Court is not bound by either one. *G.C. Dev. Corp. v. Zayas*, CV B-15-129, 2017 WL 1273965, at \*4 (S.D. Tex. Mar. 15, 2017), *report and recommendation adopted*, CV B-15-129, 2017 WL 1230814 (S.D. Tex. Apr. 4, 2017). Nonetheless, the courts in those cases focused on a different argument: whether the Thirteenth Amendment's "civic duty" exception applies to § 1589 and, if so, whether it extends to private corporations. *Owino*, 2018 WL 2193644, at \*\*6-10; *Menocal*, 113 F. Supp. 3d at 1132-1133. That is not CoreCivic's argument here. (*See* Section 4, supra; Dkt. 18 at 10-12.) And unlike those courts, this Court is bound by the Fifth Circuit's decisions in *Channer* and *Doe v. United States*, 831 F.3d 309 (5th Cir. 2016).

Although the Court in *Owino* also concluded that the TVPA generally applied to similar allegations against CoreCivic in that case, it relied solely on the plain language of the statute and ended the inquiry there. 2018 WL 2193644, at \*\*4-6. As discussed above (*see* Section 1, supra), Fifth Circuit and Supreme Court precedent permit the Court to look beyond the text if the history and purpose of the statute dictate another interpretation. It should do so in this case.[5]

---

[5] The court in *Owino* focused on the "who" (the perpetrator and victim) and ignored the context of the entire statute, including the "what" (the conduct—"labor or services"). 2018 WL

## II. THE COURT SHOULD DISMISS PLAINTIFF'S UNJUST-ENRICHMENT CLAIM.

Plaintiff argues that she is permitted to bring a claim for unjust enrichment, but she fails to address the fact that (1) it is a theory of recovery, not a substantive cause of action, and (2) unavailable if there are other legal remedies available, and that she has other available remedies. *See Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F. Supp. 3d 943, 961 (S.D. Tex. 2014); *In re Mud King Prod., Inc.*, 514 B.R. 496, 521 (Bankr. S.D. Tex. 2014), *aff'd*, 2015 WL 862319 (S.D. Tex. Feb. 27, 2015); *Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W. 3d 763, 770 (Tex. 2005). No magic word or liberal pleading standard can convert her derivative/duplicative theory of recovery into a viable, stand-alone claim. This claim should be dismissed.

## III. CONCLUSION

For these reasons, and those in CoreCivic's Motion, the Court should dismiss Plaintiff's Complaint with prejudice.[6]

---

2193644, at *4. Here, CoreCivic's argument is that the statute was not intended to reach labor performed by detainees in lawful custody of the federal government.

[6] CoreCivic separately responds to Plaintiff's Alternative Motion for Leave to Replead (Dkt. 23 at 15).

| | |
|---|---|
| Dated:  August 30, 2018 | Respectfully submitted, |
| | |
| | /s/ Daniel P. Struck |
| | Daniel P. Struck *(pro hac vice)* |
| | Rachel Love *(pro hac vice)* |
| | Ashlee B. Hesman *(pro hac vice)* |
| | Jacob B. Lee *(pro hac vice)* |
| | STRUCK LOVE BOJANOWSKI & ACEDO, PLC |
| | 3100 West Ray Road, Suite 300 |
| | Chandler, Arizona 85226 |
| | Phone: (480) 420-1600 |
| | Fax: (480) 420-1695 |
| | |
| | Allison Bowers, Bar No. 24006170 |
| | HUTCHESON BOWERS LLLP |
| | Four Barton Skyway |
| | 1301 South Mopac, Suite 430 |
| | Austin, Texas 78746 |
| | Phone: (512) 777-4447 |
| | Fax: (512) 777-4497 |
| | |
| | Attorneys for Defendant CoreCivic, Inc. |

3481796.1

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the 30th day of August, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Thomas H. Padgett, Jr. | tpadgett@buenkerlaw.com |
| Josef F. Buenker | jbuenker@buenkerlaw.com |
| Allison Bowers: | allison@hutchesonbowers.com |
| Daniel P. Struck | dstruck@strucklove.com |
| Rachel Love | rlove@strucklove.com |
| Ashlee B. Hesman | ahesman@strucklove.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

       N/A

                                  /s/ Daniel P. Struck
                                Daniel P. Struck