IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MARTHA GONZALEZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS PLAINTIFF, | § § § § |
| V. | § CIVIL NO. 1:18-CV-169-LY § |
| CORECIVIC, INC., DEFENDANT. | § § § |

## ORDER

Before the court are Defendant Corecivic's Motion to Dismiss filed June 8, 2018 (Doc. #18); Plaintiff's Opposition to Defendant's Motion to Dismiss and Alternative Motion for Leave to Amend filed July 24, 2018 (Doc. #23); Plaintiff's Notice of Supplemental Authority in Opposition to Defendant's Motion to Dismiss filed August 29, 2018 (Doc. #26); Defendant Corecivic's Reply in Support of Motion to Dismiss filed August 30, 2018 (Doc. #27); and Defendant Corecivic's Resposne to Plaintiff's Alternative Motion for Leave to Amend filed August 30, 2018 (Doc. #28). Having considered the motion, responses, replies, and supplemental authority, the court concludes that the motion to dismiss should be denied for the reasons to follow.

## I. BACKGROUND

Plaintiff Martha Gonzalez, a Mexican national, alleges that she illegally entered the United States in May 2016, voluntarily surrendering to immigration officials. Gonzalez was taken into custody by the Bureau of Immigration and Customs Enforcement ("ICE"), and detained at the Laredo Detention Center, in Laredo, Texas, and the T. Don Hutto Residential Center, in Taylor, Texas, pending her deportation proceedings. These detention centers are owned and operated by Defendant

CoreCivic, Inc. for the benefit of the United States of America and ICE, detaining immigrants in the country illegally, asylum seekers, green card holders, and those awaiting immigration hearings.

Gonzalez contends that during her detention she was paid only $1 or $1.50 per day to clean pods, work in the kitchen, sort laundry, and perform other duties under threat of punishment, including but not limited to lockdown and solitary confinement. Gonzalez further alleges that other detainees were forced to work without pay. Gonzalez alleges that if detainees refused to work CoreCivic threatened them with confinement, physical restraint, substantial and sustained restrictions, deprivation, violation of their liberty, and solitary confinement, including the denial or delay of hygiene products. Those who did work were provided items without any delay or hassle.

Gonzalez filed her complaint on behalf of herself and all other persons similarly situated. The putative class is define as "[a]ll civil immigration detainees who performed labor for no pay or at a rate of compensation of $1.00 to $2.00 per day for work performed for CoreCivic at any detention facility owned or operated by it from February 20, 2007 to the applicable opt-out date, inclusive." Gonzalez's complaint raises the following three claims: (1) a violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1589; (2) negligence; and (3) unjust enrichment. Gonzalez seeks declaratory and injunctive relief, as well as restitution, compensatory, treble, and punitive damages, and disgorgement of profits.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." Although a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009).

## III. ANALYSIS

Pursuant to the Trafficking Victim Protection Act ("TVPA"), "[w]hoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of" various impermissible means, including by means of "any scheme, plan, or pattern intended to intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a) (2015). Section 1595 permits "an individual who is a victim of a violation of [section 1589]" to bring "civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595.

CoreCivic's motion to dismiss asserts first that the TVPA does not extend to labor performed by immigration detainees held in a private detention center. CoreCivic argues that a literal

3

application of sections 1589 and 1595 would go far beyond Congress's stated intent and suggests that purpose of the TVPA is "to deter human trafficking, punish human traffickers, and protect victims of human trafficking of slavery," and that "Congress did not intend to criminalize labor by detainees in lawful custody." CoreCivic further argues that it would be both extreme and absurd to apply a forced labor statute to lawfully-detained civil-immigration detainees.

Because neither ICE nor CoreCivic transported Gonzalez across national borders, CoreCivic asserts that section 1589 should not apply. CoreCivic argues that section 1589's use of "whoever" excludes the federal government, *see* 1 U.S.C. § 1 (2016), and thus excludes private detention centers performing a "federal function," such as detention. *See Doe v. United States*, 831 F.3d 309, 316 (5th Cir. 2016) (determining that CoreCivic, then known as Corrections Corporation of America, "in housing alien detainees according to ICE specifications, [was] performing a federal function" and thus susceptible to 1983 claims).

CoreCivic seeks for the court to read Congress's purpose, evident from TVPA's congressional findings, into the statute. However, "[t]he preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (alteration in original) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). If the statutory text is unambiguous, the inquiry ends there. *See id.*.

CoreCivic's argument fails to identify any ambiguity in the language or exceptional circumstances to depart from the plain language of the statute. The Sixth Circuit addressed a similar argument in *United States v. Callahan*, 801 F.3d 606 (6th Cir. 2015). This court finds the *Callahan*

4

opinion's reasoning and conclusion persuasive. There is no ambiguity in section 1589, and this court will not read congressional findings into the statute. *See Callahan*, 801 F.3d at 617–18.

CoreCivic next argues that the complaint fails to allege facts sufficient to state a claim under the TVPA. Taking the factual allegations as true, the complaint alleges that CoreCivic had a policy of forcing detainees to perform labor or services and if the detainees refused then they would be subject to solitary confinement, denial of benefits and services, and physical threats. Courts have long recognized that "solitary confinement bears 'a further terror and peculiar mark of infamy.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (quoting *In re Medley*, 134 U.S. 160, 170 (1890). Solitary confinement alone constitutes serious harm, which Congress defined to include psychological harm. *See* 18 U.S.C. § 1589(c)(2). Thus, the court finds that solitary confinement, or the threat of solitary confinement, sufficiently alleges the means to achieve forced labor, and the court therefore concludes that Gonzalez has sufficiently stated a claim for a TVPA violation sufficient to overcome the motion to dismiss.

CoreCivic next argues that Gonzalez cannot assert a private cause of action prior to Congress's 2008 TVPA amendment. CoreCivic contends that Congress did not give the amendment retroactive effect and, therefore, any liability under the "financial benefit" prong of section 1595 can only attach to conduct after the effective date of the amendment, December 23, 2008. Therefore, CoreCivic argues, Gonzalez's claims before December 23, 2008 must fail. The Fourth Circuit addressed this issue in *Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014). Before the 2008 amendment, CoreCivic was not liable because the "financial benefit" element cause of action did not exist. After the amendment, however, CoreCivic could be found liable. Because CoreCivic can be found liable only after the amendment, the 2008 amendment shall not apply retroactively barring Congress's clear

5

intent to do so. The court's review of the amendment reveals no clear intent to apply retroactively. *See Cruz*, 773 F.3d at 144. Therefore, the court concludes that Gonzalez may only bring claims under the "financial benefit" prong for violations of the TVPA after the 2008 amendment's effective date.

Finally, CoreCivic argues that Gonzalez's derivative claims for negligence and unjust enrichment should be dismissed because her claim under the TVPA is not viable. Having determined that Gonzalez's claim under the TVPA survives the motion to dismiss, the court concludes that the derivative claims also survive at this time. As to CoreCivic's additional argument that Gonzalez's unjust enrichment claim should be dismissed because other equitable relief exists through Gonzalez's other claims, the court disagrees. Gonzalez has allege that CoreCivic coerced detainees to provide labor to CoreCivic, that CoreCivic benefitted from that labor, and that allowing CoreCivic to keep that benefit would be unjust. The court does not find at this time that Texas would not recognize an unjust enrichment claim under these circumstances. *See Excess Underwriters at Lloyd's v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W. 3d 42, 49 (Tex. 2008); *In re Kellogg Brown & Root, Inc.* 165 S.W.3d 732, 740 (Tex. 2005) (holding quantum meruit to be equitable theory of recovery intended to prevent unjust enrichment when there is implied agreement to pay for benefits received). Therefore, the court will deny CoreCivic's motion to dismiss Gonzalez's negligence unjust enrichment claims.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Corecivic's Motion to Dismiss filed June 8, 2018 (Doc. #18) is **DENIED**.[1]

**IT IS FURTHER ORDERED** that the parties are to submit to the court a Proposed Agreed Scheduling Order, in accordance with Federal Rule of Civil Procedure 26(f), that follows the form scheduling order of this court located on the website for the United States District Court for the Western District of Texas (www.txwd.uscourts.gov), the "Forms" tab, "Civil," "Austin Division," "Proposed Scheduling Order for Judge Yeakel," **on or before March 22, 2019**.

SIGNED this __1st__ day of March, 2019.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

---

[1] The court's conclusion that Gonzalez has plausibly stated allegations to overcome CoreCivic's motion to dismiss does not guarantee that Gonzalez's claims will ultimately prevail. Gonzalez bears the heavy burden of producing evidence that supports the reasonable conclusion that CoreCivic threatened Gonzalez with a serious risk of harm if she did not persist as a laborer.